**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RICHARD A. CHANDLER, 1067609,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:05-CV-1317-R** |
| | ) | **ECF** |
| **NATHANIEL QUARTERMAN,** | ) | |
| **Director TDCJ-CID,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court. The Findings, Conclusions

and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

On October 4, 2001, Petitioner was convicted of murder, enhanced by two prior

convictions. *State of Texas v. Richard Chandler*, No. F-0101635-KQ (204th Dist. Ct., Dallas

County, Tex., Oct. 4, 2001). Petitioner was sentenced to life imprisonment. On March 3, 2003,

the Fifth District Court of Appeals affirmed Petitioner's conviction. *Chandler v. State*, No. 05-

01-01663-CR, slip op. (Tex. App. – Dallas 2003). On September 3, 2003, the Court of Criminal

Appeals denied the petition for discretionary review. *Chandler v. State*, P.D.R. No. 526-03. On

March 22, 2004, the Supreme Court denied certiorari review. *Chandler v. Texas*, 541 U.S. 941

(2004).

On March 11, 2005, Petitioner filed a state petition for writ of habeas corpus. *Ex parte*

*Chandler*, Application No. 62,180-01.  On June 15, 2005, the Court of Criminal Appeals denied the application.

On June 22, 2005, Petitioner filed this federal petition.  He argues:

(1) the evidence is insufficient to support the conviction;

(2) the trial court abused its discretion in failing to declare a mistrial;

(3) his statement to police was involuntary;

(4) the prosecutor presented perjured testimony;

(5) hearsay evidence was erroneously admitted;

(6) the prosecutor committed misconduct;

(7) he is actually innocent;

(8) he was incompetent to stand trial;

(9) he received ineffective assistance of trial counsel because counsel:

      (a)      failed to conduct an adequate investigation;

      (b)      failed to file a motion to suppress evidence;

      (c)      failed to file any pretrial motions;

      (d)      failed to retain expert witnesses;

      (e)      failed to prepare or file a written bill of exceptions; and

      (f)      failed to file a motion for new trial;

(10) he received ineffective assistance of appellate counsel because counsel:

      (g)      failed to file a motion for new trial; and

      (h)      failed to raise claims on appeal that Petitioner raised on state habeas review.

## II.  Discussion

### 1.     Factual Background

On January 6, 2001, George Gary went to his friend Marvin Parson's house on Michigan Avenue.  He found Parson dead in the bedroom.  (Trial Tr. Vol. 3 at 30-48).  Police officer Daniel Avalos responded to the scene.  (*Id*. at 15-16).  Officer Avalos found the victim against a wall at the foot of the bed.  (*Id*. at 18).  The scene showed signs of a struggle, and the victim was not clothed.  (*Id*. at 22-23).

Officer Jaime Camacho also responded to the scene.  (*Id*. at 57).  Officer Camacho observed blood on the inside of the front doorknob to the house.  (*Id*. at 58).  The bedroom was in disarray: a window was broken, the window blinds were torn, and the mattress was partially off the bed.  (*Id*. at 59).

The victim's father, Odell Parson, testified that he believed some jewelry and an air compressor was missing from the home.  (*Id*. at 78).  Some costume jewelry was observed on the floor of the bedroom.  (*Id*. at 86).  The victim's wallet was also missing and was never found. (*Id.* at 84-85).

Petitioner's uncle, Joe Moss, testified that in January 2001, he was at his sister's house when the Petitioner arrived.  (*Id*. at 92).  Petitioner did not appear to have any injuries.  (*Id*. at 95).  Petitioner told Moss that "he got into it with somebody and it was a struggle and he had to get away."  (*Id*. at 96).  Moss gave a written statement to police.  The statement said that Petitioner went to a man's house on Michigan Street, climbed into bed with the him, then put the man into a "sleeper hold" because the man would not stop yelling, and that Petitioner took "stuff" and left the house.  (*Id*. at 97-98).  At trial, Moss disavowed the written statement.  He

said that he did not read this statement before signing it, that he was badgered by police, and that he did not say some of the things written in the statement.  (*Id*. at 99, 101, 107).  Though missing from his written statement, Moss testified that he told police that Petitioner said he put a man in a sleeper hold after the man surprised him.  (*Id*. at 100).  Moss told Petitioner to turn himself in to police.  (*Id*. at 102).

Detective Daniel Krieter responded to the scene.  (*Id*. at 116-19).  He did not observe any obvious injury to the victim such as a stab wound or gunshot wound.  (*Id*. at 119-20).  Krieter took photographs of the scene and collected samples of what appeared to be blood from the stain on the front doorknob, a stain next to the victim, a stain on the bathroom door, a stain on the wall, and broken glass in the bedroom.  (*Id*. at 120, 126-27).  The only comparable fingerprints found in the residence were the victim's.  (*Id*. at 135, 149).  Fingerprints from the broken glass and the front door were not the victim's or Petitioner's.  (*Id*. at 141-44, 149).  No illegal drugs were found in the residence.  (*Id*. at 153-54).

Petitioner's sister, Tonya Chandler, testified that she spoke to Petitioner after the time of the offense.  (*Id*. at 165).  Petitioner told her he was waiting on his income tax return so he could leave town.  (*Id*. at 167).  In a written statement to police, Tonya Chandler stated "I told [Petitioner] I heard what he had done."  (*Id*. at 172).  She said Petitioner then cried and said "he didn't mean to do it."  (*Id*. at 174-75).  At trial, Tonya Chandler could not remember making these statements.  (*Id.*).

Petitioner's mother, Gwendolyn Newton, testified that on January 6, 2001, she spoke to Petitioner.  (*Id*. at 181).  Petitioner told her he was afraid he had done something, and he needed money so he could leave town.  (*Id*. at 183).  Petitioner appeared to be very frightened.  (*Id*. at

186).  Newton was aware that Petitioner was manic-depressive, on medication for bipolar

disorder, and had been seeing a psychiatrist prior to the allegations against him.  (*Id.* at 185-87).

Detective Steve Reidler testified that he went to the site of the offense.  (*Id.* at 202).

After receiving the autopsy results, Reidler determined that the cause of death was homicide by

strangulation.  (*Id.* at 204-05).  On January 17, 2001, a Crime Stoppers tip caused investigators

to focus on Petitioner.  (*Id.* at 207-08).  Investigators obtained a search warrant to test

Petitioner's DNA.  (Trial Tr. Vol. 4 at 14-15).  The DNA results showed that Petitioner's blood

was found at the crime scene.  (*Id.* at 45; 198-200).

Petitioner testified in his own defense.  He stated he met the victim while walking down

the street.  (Trial Tr. Vol. 5 at 12).  He testified that moments before meeting the victim, he had

used crack cocaine.  (*Id.*).  He stated the victim invited Petitioner to use drugs with him.  (*Id.*).

Petitioner testified he is not homosexual and he did not discuss trading sex with the victim for

drugs.  (*Id.* at 13).  Upon entering the victim's house, Petitioner sat on a couch, while the victim

went to another room and closed the door.  (*Id.* at 13).  Petitioner stated he opened the door to

the room Petitioner was in, and found the victim naked.  (*Id.* 13).  Petitioner told the victim he

was not interested.  (*Id.* at 14).  Petitioner stated the victim grabbed him and a struggle ensued.

(*Id.* at 14-15).  Petitioner stated he feared for his life, and got on top of the victim and held the

victim around the neck.  (*Id.* at 15, 34).  The victim passed out.  (*Id.* at 16).  Petitioner stated he

then left the house, not knowing that the victim was dead.  (*Id.* at 17-18).

Petitioner testified that he told police he had seen men in prison being raped, and he was

only trying to prevent the victim from raping him.  (*Id.* at 20-21).  Petitioner stated he was afraid

to turn himself in to police, but he was arrested anyway for a parole violation.  (*Id.* at 22, 30).

Detective Reidler was recalled after Petitioner's testimony.  Reidler stated that Petitioner did not mention that he witnessed anyone being raped in prison.  (*Id*. at 48, 57).  Petitioner did not tell him that he was afraid, or that he was defending himself, just that he had "freaked out." (*Id*. at 52-53, 60-64, 66-67, 71).

**2.      Standard of Review**

The pertinent terms AEDPA state:

(d)      An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996.  *See Lindh*, 521 U.S. at 336.  The petition in this

case is subject to review under the AEDPA.

**3.      Insufficient Evidence**

Petitioner claims the evidence was legally and factually insufficient to support the

conviction.[1]  Federal habeas review of an insufficiency of the evidence claim is extremely

limited.  A federal court may not disturb a conviction in a state criminal proceeding unless no

rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir.

1991).  The evidence must be viewed in the light most favorable to the verdict.  *Jackson*, 443

U.S. 319; *Gibson*, 947 F.2d at 781.  This standard of review applies in both direct and

circumstantial evidence cases.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

Under Texas law, a person commits murder if he:

> (1)  intentionally or knowingly causes the death of an individual;
>
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or
>
> (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02(b).

---

[1]Respondent correctly notes that factual insufficiency of the evidence does not provide an independent basis for federal habeas relief.  "Factual insufficiency" is a creation of Texas law whereby the reviewing court scrutinizes the factfinder's weighing of the evidence.  *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  The relevant inquiry in a federal habeas proceeding, however, is whether "[a] rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990), (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).  This standard of review controls even if state law would impose a more demanding standard of proof.  *Schrader*, 904 F.2d at 284; *see also Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**           Page -7-

In this case, the record reflects, and the state appellate court found as follows:

> There is evidence in the record that on the night of Parson's death, [Petitioner] told his mother that he had done something bad, that he could not get himself out of it, and that he needed money so he could get out of town.  On the same evening, [Petitioner] told his uncle that he put a "sleeper hold" on Parson because Parson would not stop yelling.  Additionally, he told his uncle that after Parson was unconscious [Petitioner] got Parson's "stuff" and left.  However, when he left, [Petitioner] did not know if Parson was dead. [Petitioner] told his uncle that he had to get out of town. [Petitioner's] uncle told him to turn himself into the police, but [Petitioner] did not do so.  Sometime after talking to his uncle, [Petitioner] also told his sister that he needed to leave town.  When confronted by his sister that the police were looking for him in connection with Parson's death, [Petitioner] stated he knew they were, but "he didn't mean to do it."

> The medical examiner testified that bruising and scratch marks on Parson's neck indicated Parson died due to strangulation.  She further stated that the assailant probably choked Parson with his hands, applying force strong enough to fracture the hyoid bone, located underneath and protected by the jaw, and to cause death.  She also stated that before actually dying, Parson would have been rendered unconscious due to the assailant's choke hold cutting off the air flow to Parson's brain.

> [Petitioner] testified that on the day of Parson's death, he had been smoking crack cocaine and was high when he went to Parson's house.  While at Parson's house, [Petitioner], forty-five pounds heavier than Parson, admitted to straddling Parson's chest while Parson was laying face-up on the floor and putting a "sleeper hold" on Parson's neck. [Petitioner] stated that he put the hold on Parson because he was scared when Parson made unwelcome sexual advances toward him. [Petitioner] said his fear was due to his observations, while in prison, of individuals being homosexually raped. [Petitioner] said that once Parson was unconscious, he quickly released the hold and immediately ran from the house.

*Chandler v. State*, No. 05-01-01663, slip op. at 2-4.

Viewing this evidence in the light most favorable to the verdict, the Court finds that the evidence was sufficient to prove beyond a reasonable doubt that Petitioner committed murder. The state appellate court found that "a rational trier of fact could have inferred that [Petitioner] intentionally or knowingly caused Parson's death, or that [Petitioner] intended to cause Parson serious bodily injury and committed an act clearly dangerous to human life that caused Parson's death."  *Chander v. State of Texas*, No. 05-01-01663, slip op. at 4.  The state court's decision to

deny relief is neither contrary to clearly established federal law, nor unreasonable in light of the evidence presented.  This ground for relief should be denied.

**4.    Mistrial**

Petitioner argues the trial court abused its discretion when it failed to declare a mistrial after reference was made to Petitioner's criminal history.  Petitioner complains that: (1) the investigating detective referred to Petitioner being on parole; (2) the prosecutor questioned Petitioner's sister about his drug use; (3) the investigating detective commented that Petitioner was "already back in the penitentiary" when he was picked up for the murder; and (4) Petitioner's mother was questioned about his drug use.

**(a) Procedural Bar**

Petitioner's claim regarding the investigator's statement that he was in the penitentiary is procedurally barred.  Petitioner failed to object at trial to the investigator's statement.  On direct appeal, the court found the issue was therefore not preserved for review.  *Chandler v. State*, No. 05-01-01663-CR, slip op. at 4.  The state court's application of the contemporaneous objection rule precludes federal habeas review of this claim.  *Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001); *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000).

Additionally, Petitioner's claims regarding the questioning of his mother are procedurally barred.  Petitioner failed to raise this claim in his petition for discretionary review or in his application for state writ of habeas corpus.  If a state court has declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, such as filing a petition for discretionary review, the procedural bar applies.  *See Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991).  The general rule that a state court must explicitly apply a procedural

bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest court of the state and the state court to which he would be required to present his claims would now find the claim procedurally barred. *Id.*

The records reflects that Petitioner did not raise this claim on direct review or on state habeas review. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claim. The claim cannot be reviewed by a state court because it is too late to file a petition for discretionary review. If this Court were to require Petitioner to return to state court to exhaust this claim, it would be subject to dismissal. Federal courts ordinarily will not review questions of federal law when such a state procedural bar exists.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has not shown sufficient cause for his failure to present this claim to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing

*Schlup*, 513 U.S. at 327).  Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him.  Petitioner has not overcome the state procedural bar.  Accordingly, the procedural default doctrine bars federal habeas relief on this claim.

### (b) Extraneous Offenses

Petitioner claims he was entitled to a mistrial because Detective Reidler referred to Petitioner being on parole and the prosecutor questioned Petitioner's sister regarding his drug use.  The trial court, however, instructed the jury to disregard these comments.  (Trial Tr. Vol. 3 at 178-79; Vol. 4 at 7-8).  The state appellate court found that this instruction cured any error.  *Chandler v. State*, No. 05-01-01663-CR, slip op. at 5-6.  Petitioner has failed to show that this decision was unreasonable.  *See Woods v. Johnson*, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996) ("Jurors are presumed to follow their instructions.").  Further, Petitioner testified at trial and admitted to illegal drug use, his criminal past, and that he was on parole at the time of his arrest.  (Trial Tr. Vol. 5 at 12; 20-30).  Consequently any error was constitutionally harmless because the comments could not have had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1992).  These claims should be denied.

### 5.    Involuntary Statements

Petitioner argues his oral statements to police were involuntary because he was under duress, incompetent, under the influence of psychotropic medication, and eventually invoked his right to counsel.  Petitioner, however, has submitted no evidence that his statements were involuntary.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 & n.2 (5th Cir. 1983) ("Absent evidence in

the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his

pro se petition, unsupported and unsupportable by anything else contained in the record, to be of

probative evidentiary value.").  Further, Petitioner admitted at trial that he freely gave oral

statements to investigators without requesting an attorney.  (Trial Tr. Vol. 5 at 23-24, 31).   He

stated that he would give a *written* statement only after obtaining an attorney.  (*Id*. at 31).

Petitioner's claim should be denied.

## 6.      Perjury

Petitioner argues the prosecutor knowingly offered perjured testimony.  A prosecutor

may not knowingly use perjured testimony or allow perjured testimony to go uncorrected.

*Giglio v. United States*, 405 U.S. 150, 154 (1972).  To prove a due process violation, a petitioner

must show that: (1) the testimony was actually false; (2) the prosecutor was aware of the perjury;

and (3) the testimony was material.  *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Perjured testimony is material only when "there is a reasonable likelihood that the false

testimony could have affected the judgment of the jury."  *Barrientes v. Johnson*, 221 F.3d 741,

756 (5th Cir. 2000); *United States v. Washington*, 44 F.3d 1271, 1282 (5th Cir. 1995) (finding

materiality prong not met where allegedly perjurious statements "have nothing to do with

[defendant's] guilt or innocence" and evidence of guilt is "overwhelming.").  Perjury claims are

subject to a harmless error analysis.  *Barrientes*, 221 F.3d at 756.  Further, contradictory

testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between

reports, written statements and the trial testimony of prosecution witnesses do not, standing

alone, establish perjury.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v.*

*Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).

In this case, Petitioner states that Detective Reidler falsely testified before the grand jury that the victim had a crushed larynx, when the autopsy showed the victim's windpipe was intact. Petitioner also states that Reidler coerced a witness named Reginald Gray to give a written statement, and that the prosecution offered Gray's statements into evidence at trial and to the grand jury knowing they were false. Petitioner has not shown that Reginald Gray's statements were actually false.  Further, even if Detective Reidler's statement that the victim's larynx was crushed was incorrect, the medical examiner testified the victim died of strangulation, that the victim's neck showed external and internal bruising, and that the hyoid bone located in the neck area was broken.  (Trial Tr. Vol. 4 at 137-39).  Petitioner has failed to show that detective Reilder's statement was material as to cause of death.  Petitioner has failed to show a due process violation.

## 7.    Prosecutorial Misconduct

Petitioner raises several claims of prosecutorial misconduct.  To merit habeas corpus relief, prosecutorial misconduct must have infected the trial with unfairness so as to make the resulting conviction a denial of due process.  *Greer v. Miller*, 483 U.S. 756, 765 (1987).  In other words, the conduct must have rendered the trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 179-81 (1986).  A trial will be deemed fundamentally unfair only in the most egregious situations and only if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *Barrientes*, 221 F.3d at 753; *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987).

### (a) Criminal History

Petitioner claims the prosecution committed misconduct when it referred to his drug use

and criminal history.  As discussed above, however, these claims are either procedurally barred,

were cured by the trial court's instructions to the jury to disregard the comments, or  were

harmless because Petitioner testified to his drug use and criminal history.

### (b) Characterization as "Murder"

Petitioner argues the prosecutor improperly referred to the deceased as a "victim" and

said the offense was a "murder."  The medical examiner, however, testified that the decedent

died from strangulation.  (Trial Tr. Vol. 4 at 139).  Petitioner has not shown it was improper to

refer to the decedent as the victim of murder.

### (c) Stolen Property

Petitioner argues the prosecutor improperly inferred that he stole property from the

victim and the prosecutor made conclusions regarding the evidence.  The victim's father testified

that property was missing from the victim's home.  (Trial Tr. Vol. 3 at 78, 84-85).  The

prosecutor question Petitioner about this missing property.  (Trial Tr. Vol. 5 at 32-33).  A

prosecutor may refer to the testimony presented and reasonable inferences from that testimony.

*United States v. Munoz*, 150 F.3d 401, 414-415 (5th Cir. 1998).  Petitioner has failed to show the

prosecutor committed misconduct.

### (d) homosexuality

Petitioner claims the prosecutor inferred that Petitioner's sister stated he was homosexual

or bisexual.  The record shows, however, that Detective Reidler testified he did not receive that

information from Petitioner's sister.  (Trial Tr. Vol. 4 at 108).  Further, the defense attorney

questioned Detective Reidler about the sexual orientation of Petitioner and the victim.  (*Id.* at

104-106).  Petitioner has failed to show the prosecutor committed misconduct and that his trial

was rendered fundamentally unfair.

### (e) Sidebar

Petitioner argues the prosecutor made several improper side bar attacks.  In the first sidebar statement, the prosecutor stated that questions regarding the victim's background were designed to hurt the family.  The prosecutor then withdrew the question.  (Trial Tr. Vol. 4 at 94). In the second sidebar statement, the prosecutor alleged that Petitioner "concocted" a self-defense theory after obtaining a lawyer.  (Trial Tr. Vol. 5 at 72).  The trial court instructed the jury to disregard the statement.  Petitioner has not shown that these statements rendered his trial fundamentally unfair.  *See Woods*, 75 F.3d at 1036 n.29 (5th Cir. 1996) ("Jurors are presumed to follow their instructions.").

Finally, Petitioner's third claim cites pages from the prosecutor's closing arguments. Petitioner, however, does not specify which statement he believes was improper.  Petitioner's traverse states the Court should refer to his state habeas petition for further arguments.  The state habeas petition shows that Petitioner complains that the prosecutor's closing arguments referred to the two previous sidebar comments.  As discussed above, however, Petitioner has failed to show these sidebar comments rendered his trial fundamentally unfair.  Petitioner's claim should be denied.

### (f) Silence

Petitioner argues the prosecutor improperly commented on his post-arrest silence when he questioned him about his refusal to give a written statement until after he consulted an attorney.  (Trial Tr. Vol. 5 at 30-31).  The prosecutor, however, is allowed to rebut Petitioner's claim that he fully cooperated with the investigation.  (*Id*. at 23-24, 30); *see, e.g., United States*

*v. Reveles*, 190 F.3d 678, 684-85 (finding prosecutor may question defendant regarding his post-arrest silence to rebut claim that defendant was cooperating with police); *Pitts v. Anderson*, 122 F.3d 275, 282 (5th Cir. 1997).  Petitioner's claim should therefore be denied.

### (g) Bolstering Credibility

Petitioner argues the prosecutor improperly bolstered the credibility of certain witnesses. Although Petitioner cites certain pages of the trial transcript for this argument, he does not identify any of the statements to which he objects.  Petitioner's state petition also does not refer to specific statements.  Petitioner's claims are conclusory and should be denied.

**8.**     ***Brady***

Petitioner argues the prosecutor withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence.  *Id.* at 87.  Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant.  *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).   "[A] reasonable probability is one sufficient to undermine confidence in the outcome."  *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005) (citing *Kyles v. Whitley*, 514 U.S. 419 (1995)).  Further, "[i]f the evidence provides only incremental impeachment value, it does not rise to the level of *Brady* materiality."  *Miller*, 431 F.3d at 251.

In this case, Petitioner argues he was not provided with pre-trial access to: (1) Officer Avalos' police report; (2) Joe Moss', Tonya Chanlder's and Gwendolyn Newton's statements to the investigating officer; (3) Officer Krieter's police report; (4) Officer George's supplemental

report; (5) Officer Reidler's files; (6) the autopsy report; and (7) the grand jury minutes.

Petitioner complains that he was provided with this information only at trial.  Petitioner,

however, has failed to show that any of this evidence was exculpatory.  Petitioner has also failed

to show the evidence was suppressed.  Defense counsel filed no motions for pre-trial discovery

and the prosecution provided this evidence at trial.  He has therefore failed to establish a *Brady*

claim.

**9.     Actual Innocence**

Petitioner claims he should be granted habeas relief because he is actually innocent.  An

actual innocence claim, standing alone, is insufficient to merit habeas relief.  *See Herrera v.*

*Collins*, 506 U.S. 390, 400 (1993); *Dowthitt*, 230 F.3d at 741.  There must also be evidence of an

independent constitutional violation in the state criminal proceeding.  *Id.*  Here, Petitioner has

failed to establish an underlying constitutional violation.  Nor is there any affirmative evidence

of his innocence.  Petitioner claims that he has new evidence in the form of an affidavit from

Reginald Gray.  Petitioner, however, has not attached any such affidavit.  He also failed to attach

this affidavit to his state habeas petition.  Petitioner's claim is without merit and should be

denied.

**10.    Competency**

Petitioner argues he was incompetent to stand trial because he had a prior head injury,

had a mental illness diagnosis, was on medication and was seeing a psychiatrist.

It is well-settled that the criminal trial of an accused who is legally incompetent violates

due process.  *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Cooper v. Oklahoma*, 517 U.S. 348,

353 (1996).  An accused is competent to stand trial if he "has sufficient present ability to consult

with his lawyer with a reasonable degree of rational understanding[;] and . . . has a rational as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 403 (1960).

It is unclear whether Petitioner is raising a procedural competency claim or a substantive claim. The procedural competency claim is often referred to as a *Pate* claim. The Supreme Court's opinion in *Pate v. Robinson*, 383 U.S. 375 (1966), established that a court must *sua sponte* conduct an inquiry into a defendant's mental capacity if the evidence before the court raises a bona fide doubt as to the defendant's competency to stand trial. *Id.* at 385. In this case, the trial court had no evidence that Petitioner was incompetent to stand trial. Petitioner did not raise the competency issue at trial. Further, Petitioner testified on his own behalf. The record shows that Petitioner coherently answered all questions on direct and cross-examination. Therefore, to the extent that Petitioner argues the trial court should have *sua sponte* conducted a competency hearing, is claim is without merit.

Petitioner also raises a substantive competency claim. He alleges the state habeas court erred in denying his claim that he was incompetent to stand trial. A habeas petitioner's burden to demonstrate incompetency at the time of trial "is extremely heavy." *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983). The burden requires the petitioner to "present facts sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt" as to his competency. *Id.*

In this case, Petitioner states he had a prior head injury, had a mental illness diagnosis, was on medication and was seeing a psychiatrist. A history of mental illness, or the taking of psychotropic medications, however, does not establish that a defendant is incompetent. *See*

*Dunn v. Johnson*, 162 F.3d 302, 305-06 (1998); *United States v. Williams*, 998 F.2d 258, 267 (5th Cir. 1993).  Petitioner has failed to present facts sufficient to raise a substantial and legitimate doubt as to his competency at the time of trial.  He has therefore failed to show that the state court's rejection of this claim was unreasonable.

**11.     Ineffective Assistance of Counsel**

    <u>**(a) Trial Counsel**</u>

    Petitioner alleges he received ineffective assistance counsel because his counsel: (1) failed to conduct an adequate pre-trial investigation; (2) failed to file pretrial motions to suppress evidence and/or demand pretrial hearings; (3) failed to file any pretrial motions and/or attempt to preserve trial and appellate rights; (4) failed to retain experts to prove the theory of self-defense; and (5) failed to prepare and file a bill of exception and/or motion for new trial.

    To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*

    Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a

different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (i)  Failure to Investigate

To establish that counsel was ineffective for a failure to investigate, the petitioner must do more than merely allege a failure to investigate – he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

In this case, Petitioner has not stated what type of further investigation should have been conducted, or what a further investigation would have revealed.  He states only that his counsel "failed to track down impeachment evidence. . . ."  Petitioner's conclusory allegations are insufficient. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).  Petitioner's claims should be denied.

### (ii)  Pretrial Motions

Petitioner argues his counsel failed to file a motion to suppress evidence and/or demand pretrial hearings outside the presence of the jury.  Petitioner, however, does not state the legal basis for suppressing any evidence.  He has further failed to show that the outcome of the trial would have been different if his counsel would have filed motions to suppress, motions for discovery, or any other motion.  Petitioner's claims is conclusory and should be denied. *Ross*, 694 F.2d at 1012.

<u>(iii) Trial and/or Appellate Rights and Expert Witnesses</u>

Petitioner argues his counsel was ineffective for failing to file pretrial motions and failing to preserve his trial and/or appellate rights.  Petitioner states his counsel should have sent him for psychiatric testing.  He also states his counsel should have retained expert witnesses on the issues of self-defense, blood analysis and strangulation.  Petitioner, however, has not shown that such testing would have been favorable to the defense.  As the Fifth Circuit has stated, "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ." *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986).  Petitioner's claims are without merit and should be denied.

<u>(iv)  True Bill/Motion for New Trial</u>

Petitioner argues his counsel was ineffective because counsel failed to file a true bill of exceptions and/or failed to file a motion for new trial.  Petitioner does not state what issues should have been presented in a bill of exception of a motion for new trial.  Further, the record shows that defense counsel filed a motion for new trial.  (Clerk's Record at 35).  Petitioner's claim is without merit and should be denied.

**B.  Appellate Counsel**

Petitioner states he received ineffective assistance of appellate counsel because counsel: (1) failed to file a motion for new trial; (2) failed to raise claims of ineffective assistance of trial counsel; (3) failed to raise the claim that Petitioner was incompetent to stand trial; and (4) failed to raise claims of police and prosecutorial misconduct "in numerous regards."

As stated above, Petitioner's trial counsel filed a motion for new trial.  Petitioner does not state what further, or different, claims Petitioner's appellate counsel should have argued in a

motion for new trial.  Further, as discussed above, Petitioner's claims of ineffective assistance of trial counsel and incompetency to stand trial are without merit.  Appellate counsel is not required to file frivolous motions.  *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).   Finally, Petitioner claims "numerous" instances of police and prosecutorial misconduct, but provides the Court with no specific instances of misconduct.  The claims are conclusory and should be denied.

Finally, in response to Respondent's argument that Petitioner's ineffective assistance of trial and appellate counsel claims are conclusory, Petitioner refers the Court to his state habeas petition and memorandum.  Even considering the arguments in Petitioner's state petition, Petitioner has failed to establish the required prejudice under *Strickland*.

**10.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest.  Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.

Signed this 7th day of November, 2006.


_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO OBJECT</u>**

The United States District Clerk shall serve a copy of these findings and

recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to

object to these findings and recommendations must file and serve written objections within ten

(10) days after being served with a copy.  A party filing objections must specifically identify

those findings and recommendations to which objections are being made.  The District Court

need not consider frivolous, conclusory or general objections.  The failure to file such written

objections to these proposed findings and recommendations shall bar that party from a *de novo*

determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  Additionally, the

failure to file written objections to proposed findings and recommendations within ten (10) days

after being served with a copy shall bar the aggrieved party from appealing the factual findings

and legal conclusions of the Magistrate Judge that are accepted by the District Court, except

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc).